**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KEVIN L. W., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 18-CV-481-JED-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Kevin L. W. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.     General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old male, applied for Title XVI supplemental security income benefits on April 16, 2015, alleging a disability onset date of July 5, 2005, later amended to April 16, 2015.  R. 20, 188-193.  Plaintiff claimed he was unable to work due to conditions including severe back pain, arthritis, depression, knee pain, left-ear deafness, and memory problems.  R. 204.  Plaintiff's claim for benefits was denied initially on August 24, 2015, and on reconsideration on October 19, 2015.  R. 85-111.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on June 1, 2017.  R. 45-84.  The ALJ issued a decision on August 7, 2017, denying benefits and finding Plaintiff not disabled because he was able to perform other work existing in the national economy.  R. 20-40.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of April 16, 2015.  R. 24.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; obesity; history of seizure; depressive disorder; and anxiety disorder.  *Id.*  He found Plaintiff's impairments of hearing loss, hypercholesterolemia, and bronchitis were non-severe.  R. 24-25.  He found Plaintiff's impairments of hypothyroidism, insomnia, and low testosterone to be medically non-determinable.  R. 25.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 26-29.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had marked

3

limitation in the area of interacting with others; moderate limitation in the two areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace; and mild limitation in the area of adapting or managing oneself. R. 27-29.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's third-party statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of work as follows:

> With respect to lifting, carrying, pushing, and pulling, he is limited to light and sedentary exertion work. With respect to walking or standing, he is limited to 2 hours (combined total) of an 8-hour workday, with regular work breaks. He is able to climb ramps or stairs only occasionally, is able to bend, stoop, crouch, and crawl not more than occasionally and is unable to climb rope ladders, and scaffolds, or work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. He is unable to perform tasks requiring overhead reaching (for purposes of hand controls) more than occasionally and was further unable to perform tasks requiring the use of foot pedals more than occasionally. He is able to understand, remember, and carry out simple instructions in a work-related setting, but is unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over a telephone. He is afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, and allied disorders, all variously described, that were of sufficient severity so as to be noticeable to him at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations.

R. 29-30 (italics removed). At step four, the ALJ found that Plaintiff had no past relevant work. R. 37-38. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary exertion work, such as Semi-Conductor Bonder and Touch-Up Screener. R. 38-39. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 39. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issues**

Plaintiff raises three points of error in his challenge to the denial of benefits, which the undersigned re-organizes into four: (1) the ALJ erred at step two; (2) the ALJ erred at step three; (3) the ALJ's physical RFC is not supported by substantial evidence; and (4) the ALJ's step-five determination is not supported by substantial evidence. ECF No. 13.

**IV.    Analysis**

**A.    ALJ's Step-Two Analysis Was Adequate**

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider a number of Plaintiff's impairments, including his low testosterone, chronic pain syndrome, headaches, hypertension, and right knee impairment.[1] Plaintiff's arguments are unavailing. Regarding Plaintiff's low testosterone, the ALJ noted the condition at step two but found it to be non-medically determinable, because it was diagnosed by an advanced practice registered nurse ("APRN"), which was not an acceptable medical source for purposes of Plaintiff's claim. R. 26 (citing R. 449). An impairment may only be "medically determinable" if established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921.[2] The records Plaintiff cites in support of finding this condition to be medically determinable all pre-date the alleged onset date, and it is further unclear from those records whether an acceptable medical source made the diagnosis. *See* R. 350-352, 355. The undersigned identifies no error in the ALJ's assessment of this condition.

---

[1] Plaintiff also appears to take issue with the ALJ's weighing of the opinion of Plaintiff's treating physician, Abel Lau, M.D. ECF No. 13 at 8. However, Plaintiff fails to develop any coherent argument on this issue. Accordingly, any such argument is waived. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (quotations and brackets omitted)).

[2] For claims filed on or before March 27, 2017, APRNS are not acceptable medical sources. *See* 20 C.F.R. § 416.902(a)(7).

5

As for Plaintiff's alleged chronic pain syndrome and headaches, the records Plaintiff cites all pre-date the alleged onset date, and he cites no records from the period at issue to support any functional limitations. R. 340 (March 2015), R. 358 (August 2014), R. 436 (March 2012). Regarding Plaintiff's hypertension, the records Plaintiff cites indicate he was diagnosed with this condition by a physician in 2009 (R. 293), but only by a certified nurse-practitioner ("CNP") during the relevant period (R. 456). As with APRNs, CNPs are not acceptable medical sources for claims filed before March 27, 2017. 20 C.F.R. § 416.902(a). Accordingly, the undersigned finds no error in the ALJ's assessment of these conditions.

Regarding Plaintiff's right knee impairment, Plaintiff points to his own subjective statements of knee pain (R. 73, 121, 235, 368); MRI records from 2003 showing degenerative changes and tears in the right knee (R. 409); and a 2009 consultative exam assessing Plaintiff with right knee tears (R. 293). However, Plaintiff fails to note that the July 2015 consultative examiner observed normal extremities and normal gait despite weak heel-toe walking. R. 369-370. The consultative examiner's opinion stated, "He reports knee pain and back pain, but his physical exam is normal. His gait has been normal, however he brought a cane with him to walk. While observing him, he can walk normally without the cane." R. 370. In addition, Plaintiff's RFC included a light/sedentary exertion level with postural limitations including limits of two hours of walking or standing in an eight-hour workday. The undersigned identifies no error in the ALJ's assessment of this condition. Plaintiff is simply asking the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172.

Moreover, given the fact that the ALJ found Plaintiff to have severe impairments and addressed or accounted for the medically determinable impairments Plaintiff identifies, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See*

6

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### B.     ALJ's Step-Three Conclusion Is Supported by Substantial Evidence

In the second allegation of error, Plaintiff argues that the ALJ failed to properly consider whether he met or medically equaled Listing § 1.04(A), pertaining to spinal disorders. At step three, a disability claimant is found disabled if he has an impairment that meets or medically equals all of the requirements of a Listing. *See* 20 C.F.R. § 416.924. The claimant bears the burden to prove disability at step three, and he must present evidence to show that he met or medically equaled a Listing. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Listing § 1.04(A) provides that a claimant is disabled if he meets the following requirements:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A). The ALJ considered this Listing but concluded that the medical evidence did not support the required criteria to meet or equal the Listing. R. 26. The ALJ stated the medical evidence showed only mild degenerative disc disease and no compromise of the nerve root with compression. *Id.* In support of this finding, the ALJ cited a

7

series of spinal MRI results taken in November 2016, which showed "mild disc space narrowing at the L5-S1 level with associated facet arthropathy as described;" "minimal spondylosis" and "[n]o acute osseous findings" in the thoracic spine; and "[m]ild degenerative disc space narrowing and spondylosis most probably at the C5-6 level." R. 460-462. None of these MRI results support a finding of nerve root compression. In addition, Plaintiff's medical records from the period at issue do not show that Plaintiff's impairments would meet the remaining criteria. In particular, Plaintiff was observed to have normal gait and musculoskeletal ranges of motion in June 2015 (R. 449). In July 2015, the consultative examiner observed Plaintiff had full spinal range of motion despite pain in the lumbar-sacral spine, negative straight-leg raising tests in both seated and supine positions, normal muscle bulk and tone in extremities, equal muscle strength bilaterally, equal calf and thigh circumferences, normal deep tendon reflexes, no sensory or motor deficit, normal coordination, and normal gait. R. 369-370.

In support of his argument that he meets the Listing, Plaintiff points to several records from 2012, which pre-date the alleged onset date by several years. R. 425, 426, 430, 433, 435. Even if these MRI records provide evidence of nerve root compromise in 2012, they do not demonstrate Plaintiff met a Listing as of his alleged onset date in 2015 or any time thereafter. Plaintiff ignores the later MRI results, which show milder findings than the 2012 MRI results. The only records Plaintiff identifies from the period at issue show only diagnoses of radiculopathy and back pain. R. 336, 338. These diagnoses alone, however, do not show Plaintiff met or equaled the Listing. The undersigned identifies no error in the ALJ's step-three findings.

    **C.    ALJ Reasonably Considered and Evaluated the Evidence Regarding Plaintiff's Physical Impairments**

Plaintiff argues that, in determining the RFC, ALJ failed to adequately consider Plaintiff's (1) non-severe impairment of hearing loss, and (2) problems with use of his hands. Regarding

8

hearing loss, Plaintiff points to his report of experiencing 75% deafness in his right ear. R. 293. However, as the ALJ explained at step two, there is no evidence that Plaintiff's alleged hearing loss causes more than minimal limitations in work activities. R. 25. In both of Plaintiff's consultative exams, his tympanic membranes were intact bilaterally, there was no hearing deficit to normal conversational voice, and mastoid processes were non-tender bilaterally. R. 292, 369. Although Plaintiff was diagnosed with chronic *left* middle ear and mastoid disease in 2016 (R. 557-558), Plaintiff does not identify records supportive of a *right* ear problem or other objective evidence supportive of hearing loss in either ear. It is not the diagnosis, but the resulting functional limitations that determine disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). Accordingly, the ALJ's RFC did not need to account for the alleged hearing loss, and his hypothetical question to the VE did not need to include hearing limitations.

Regarding Plaintiff's hand use, Plaintiff points to records from 2012 and 2015 that are supportive of his back problems. R. 333, 338, 430, 435. These records do not, however, demonstrate problems with the hands. Plaintiff also points to his self-reports of hand numbness and pain. R. 61, 283, 285, 291, 309, 379, 468. However, Plaintiff does not point to any records demonstrating functional limitations resulting from his hand pain/numbness. A consultative exam in 2009 showed 5/5 bilateral grip strength strong and firm, ability to perform both gross and fine tactile manipulation, and adequate finger-to-thumb opposition. R. 293. A 2015 consultative exam revealed equal bilateral grip strength, normal-appearing hands and fingers, ability to perform both gross and fine tactile manipulation, and adequate finger-to thumb opposition. R. 370. Accordingly, the ALJ's RFC did not need to account for the alleged hand problems, and his hypothetical question to the VE did not need to include hand limitations.

**D.     ALJ's Step Five Findings Were Supported by Substantial Evidence**

Plaintiff contends substantial evidence does not support the ALJ's step-five determination that Plaintiff could perform the representative sedentary jobs of Semi-Conductor Bonder and Touch-Up Screener. Plaintiff raises four allegations of error related to step five.[3]

First, Plaintiff argues the ALJ's final RFC does not match any of the hypothetical questions to the VE, which amounts to reversible error. Specifically, Plaintiff points out that none of the hypothetical questions included the limitations of either occasional use of foot pedals or occasional interaction with the general public. Plaintiff's argument is unavailing. Neither job identified by the VE includes any task that would require the use of foot pedals. *See* DOT 726.684-110 (Touch-Up Screener),[4] 726.685-066 (Semi-Conductor Bonder).[5] Nor does either position require

---

[3] Plaintiff also complains generally in this section that the RFC is unsupported by substantial evidence, but he fails to develop any coherent argument. ECF No. 13 at 11. Accordingly, any such argument is waived. *See Femedeer*, 227 F.3d at 1255. Plaintiff's more specific arguments regarding RFC are addressed above in Part IV.C. To the extent Plaintiff complains that the VE did not address physical or mental limitations not ultimately adopted into the RFC, such discussion was not required. *See Bias v. Astrue*, 484 F. App'x 275, 276 (10th Cir. 2012) ("[W]hen it comes to posing a hypothetical to a vocational expert, if substantial evidence supports an ALJ's finding that a 'non-severe' impairment does not create any work-related limitations, the ALJ is not required to include that impairment in his hypothetical.").

[4] The job description for Touch-Up Screener states: "Inspects printed circuit board (PCB) assemblies for defects, such as missing or damaged components, loose connections, or defective solder: Examines PCB's under magnification lamp and compares boards to sample board to detect defects. Labels defects requiring extensive repairs, such as missing or misaligned parts, damaged components, and loose connections, and routes boards to repairer. Performs minor repairs, such as cleaning boards with freon to remove solder flux; trimming long leads, using wire cutter; removing excess solder from solder points (connections), using suction bulb or solder wick and soldering iron; or resoldering connections on PCB's where solder is insufficient. Maintains record of defects and repairs to indicate recurring production problems. May reposition and solder misaligned components. May measure clearances between board and connectors, using gauges.

[5] The job description for Semi-Conductor Bonder states: Tends automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads: Reviews schematic diagram or work order to determine bonding specifications. Turns dials to set bonding machine temperature controls and to regulate wire feeding mechanism. Mounts spool of wire onto holder and inserts wire end through guides, using tweezers. Positions semiconductor

significant interaction with the public. Both positions have an "8" as the fifth digit of their DOT code. Appendix B of the DOT states that the fifth digit of the code reflects the job's relationship to "People." DOT App'x B, 1991 WL 688701. The "People" category has a range from 0 to 8, with 8 being the lowest level. *Id.* The DOT specifies that 8 corresponds to a worker function of "Taking Instructions—Helping," which is defined as "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." *Id.* In addition to providing a "People" rating, the DOT job description indicates whether the "People" aspect of the job is "significant" or "not significant." The "People" rating for both Touch-Up Screener and Semi-Conductor Bonder is 8 and is designated as "not significant." DOT 726.684-110, 726.685-066. Accordingly, any error in the ALJ's hypothetical question to the VE is harmless and does not constitute reversible error. *See Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009) (ALJ's failure to question VE about conflicts between expert's testimony and DOT was harmless where no conflict existed).

Second, Plaintiff contends the VE's testimony was unreliable, because she stated the incorrect DOT number for the job of Touch-Up Screener. The VE testified that the job of Touch-Up Screener had the DOT code of 726.685-110, and the ALJ repeated the error in the decision. R. 39, 79. The correct DOT number for "Touch-Up Screener" is 726.684-110, and there is no DOT job corresponding to the number 726.685-110. The undersigned identifies no reversible error.

---

package into magazine of automatic feed mechanism, and observes package, using microscope or equipment display screen, to ensure connections to be bonded are aligned with bonding wire. Adjusts alignment as necessary. Activates machine that automatically bonds wire to specified connections on semiconductor package leads. Removes packages from bonding machine and places packages in work tray. May test tensile strength of bonded connections, using testing equipment. May locate connections and bond wire to connect circuitry of hybrid circuits, using precision-bonding machine.

11

While Plaintiff is correct that the ALJ and the VE misidentified the DOT code for Touch-Up Screener by one digit, the ALJ nonetheless correctly identified the position as sedentary, with a Specific Vocational Preparation ("SVP") of two, and he correctly reproduced the VE's testimony regarding the available number of jobs for that position. R. 39, 79. Plaintiff fails to show that the VE's or the ALJ's mistake affected the VE's testimony or the ALJ's decision in any way. This mistake falls within the category of a harmless scrivener's error, and no reversible error or conflict occurred. *See Poppa*, 569 F.3d at 1172 n.5 (finding ALJ's incorrect statement that surgeries occurred in 2004 rather than 2005 was "mere scrivener's error" that did not affect outcome of case); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("certain technical errors" are minor enough to be harmless).

Third, Plaintiff alleges his use of a cane would make it difficult to carry tools, as required by the jobs the VE identified. However, the medical record does not support Plaintiff's need for a cane to walk. *See* R. 390, 395, 449, 530, 536, 542, 548 (normal heel-toe stride), 453, 456 (slow, guarded gait without use of assistive devices). In July 2015, the consultative examiner observed Plaintiff had a "safe and stable" gait and did not need a cane to walk normally. R. 370. Plaintiff points to no objective evidence from the relevant time period supporting his need for a cane to walk. Accordingly, the ALJ was not required to include such a limitation in his hypothetical questions to the VE.

Finally, Plaintiff contends that, together or separately, the jobs the VE identified do not constitute a significant number of jobs in the national economy. As explained above, the undersigned finds no conflict with either position identified by the VE, making an analysis of the separate positions unnecessary. As for the two jobs combined, the ALJ found that 78,000 jobs in the national economy was a "significant" number of jobs. R. 39.

There is no magic number that qualifies as a "significant number" of jobs. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Rather, the evaluation of numerical significance, which "entails many fact-specific considerations requiring individualized evaluation," "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen*, 357 F.3d at 1144 (quoting *Trimiar*, 966 F.2d at 1330) (quotation marks omitted).

Plaintiff argues that, given the low number of Oklahoma jobs available for the two combined positions (750), a case-specific analysis was required pursuant to *Trimiar*, 966 F.2d at 1326. However, a failure to conduct a case-specific analysis where relatively few jobs were available locally does not require remand, as long as there are significant numbers of jobs available nationally. *See Raymond v. Astrue*, 356 F. App'x 173, 178 n.2 (10th Cir. 2009) ("*Trimiar* does *not* hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is, as here (1.34 million), much larger."); *Botello v. Astrue,* 376 F. App'x 847, 850-51 (10th Cir. 2010) ("[W]e can uphold the ALJ's significant numbers ruling based solely on the numbers of jobs that the VE identified as being available in the national economy.") (following reasoning of *Raymond,* 356 F. App'x at 178 n.2). Accordingly, the undersigned need not analyze whether the number of Oklahoma jobs was significant.

Plaintiff further argues the 78,000 available national jobs is not "significant." However, the ALJ made the initial determination that 78,000 was a significant number of jobs in this case, and the court must typically defer to the ALJ's common sense in determining numerical significance based on the particular facts of the case. *Allen*, 357 F.3d at 1144. Contrary to Plaintiff's assertion, a court need not supply a finding regarding numerical significance in order to affirm the ALJ's conclusion that 78,000 is a significant number of national jobs. This number is

13

not "insignificant" as a matter of law, and the undersigned will not reject it under these circumstances. *See Lynn v. Colvin*, No. 13-CV-596-GKF-TLW, 2015 WL 1000217, at *5-6 (N.D. Okla. Mar. 6, 2015) (affirming ALJ's finding that 69,700 was a significant number of jobs).

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 10, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 27th day of January, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**